FILED
CLERK

9:51 am, Feb 28, 2024

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------X

BETH SPIERER,

                Plaintiff,

   -against-

THE COUNTY OF SUFFOLK, NEW YORK;
SUFFOLK COUNTY POLICE DEPARTMENT
DETECTIVE DAVID VERRELLI Shield
No. 1585, Individually and in his
Professional capacity; and JOHN
and JANE DOE #1-10,

                Defendants.

--------------------------------X

MEMORANDUM & ORDER
19-CV-4527(JS)(AYS)

APPEARANCES

For Plaintiff:        Joshua Mathew Friedman, Esq.
                   Joseph A. Myers, Esq.
                   Phillips & Associates, PLLC
                   585 Stewart Avenue, Suite 410
                   Garden City, New York  11530

For Defendant        Arlene S. Zwilling, Esq.
County of Suffolk:   Suffolk County Attorney
                   P.O. Box 6100
                   H. Lee Dennison Building, Fifth Floor
                   100 Veterans Memorial Highway
                   Hauppauge, New York,  11788

For Defendant        Peter E. Brill, Esq.
David Verrelli:      Brill Legal Group, P.C.
                   64 Hilton Avenue
                   Hempstead, New York,  11550

SEYBERT, District Judge:

        The County of Suffolk (the "County") moves, pursuant to

Rule 56 of the Federal Rules of Civil Procedure, for summary

judgment in its favor against Beth Spierer (hereafter, "Spierer"

or "Plaintiff") (<u>see</u> County's Motion, ECF No. 40); Defendant David Verrelli ("Verrelli"), likewise, moves for summary judgment in his favor ("Verrelli's Motion") (ECF No. 44.)  For the reasons that follow, the County's Motion is GRANTED; Verrelli's Motion is also GRANTED and Counts One, Two and Three of Plaintiff's Complaint are DISMISSED WITH PREJUDICE.  Additionally, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, <u>to wit</u>: Count Four and Count Five, therefore, Plaintiff's state law claims are DISMISSED WITHOUT PREJUDICE.


[Remainder of page intentionally left blank.]

BACKGROUND

I.   Facts[1]

A. Plaintiff's Case and Verrelli's Investigative Efforts

     Beginning in December 2015, Plaintiff has been the victim of an unknown individual who has been stalking and harassing her.  (Pl.'s 56.1 Counterstmt. to County ¶ 1.)  Consequently, on

---

[1] The facts set forth herein are taken from the parties' respective Rule 56.1 Statements and the exhibits attached thereto (see County's Am. 56.1 Stmt., ECF No. 38; Verrelli 56.1 Stmt., ECF No. 35; Pl.'s 56.1 Counterstmt. to County, ECF No. 39; Pl.'s 56.1 Counterstmt. to Verrelli, ECF No. 37; see also Friedman Decl., ECF No. 47).

Unless otherwise noted, a standalone citation to a party's Rule 56.1 statement throughout this Order means that the Court has deemed the underlying factual assertion undisputed.  Any citation to a Rule 56.1 statement incorporates by reference the documents cited within.  Where relevant, however, the Court may also cite directly to an underlying document.  The Court has deemed true undisputed facts averred in a party's Rule 56.1 statement to which the opposing party cites no admissible evidence in rebuttal.  See Steward v. Fashion Inst. of Tech., No. 18-CV-12297, 2020 WL 6712267, at *8 (S.D.N.Y. Nov. 16, 2020) ("[P]ursuant to Local Civil Rule 56.1 [the movant's] statements are deemed to be admitted where [the non-moving party] has failed to specifically controvert them with citations to the record." (quoting Knight v. N.Y.C. Hous. Auth., No. 03-CV-2746, 2007 WL 313435, at *1 (S.D.N.Y. Feb. 2, 2007))); Lumbermens Mut. Cas. Co. v. Dinow, No. 06-CV-3881, 2012 WL 4498827, at *2 n.2 (E.D.N.Y. Sept. 28, 2012) ("Local Rule 56.1 requires . . . that disputed facts be specifically controverted by admissible evidence.  Mere denial of an opposing party's statement or denial by general reference to an exhibit or affidavit does not specifically controvert anything.").  "Additionally, to the extent [a party's] 56.1 statement 'improperly interjects arguments and/or immaterial facts in response to facts asserted by [the opposing party] without specifically controverting those facts,' the Court has disregarded [such] statement[s]."  McFarlance v. Harry's Nurses Registry, No. 17-CV-6360, 2020 WL 1643781, at *1 n.1 (E.D.N.Y. Apr. 2, 2020).

December 9, 2015, Plaintiff "went to the Fifth Precinct of defendant Suffolk County Police Department" (the "Police Department") "and reported that she had received numerous and continuing phone calls and texts" threatening "her with sexual violence." (County's Am. 56.1 Stmt. ¶ 1.) The calls and texts appeared to be coming from various spoofed phone numbers. (Id.) Initially, two unnamed police officers handled Plaintiff's investigation. (Id. ¶ 2.)

In 2016, Plaintiff's case was assigned to Verrelli; at that time, Verrelli held the rank of Police Officer. (Id.) Verrelli testified his supervisors had told him Plaintiff's case was unsolvable. (Verrelli Dep. Tr., Ex. B, ECF No. 39-2, attached to Pl.'s 56.1 Counterstmt. to County, 136:14-17.)[2] Regardless, Verrelli testified he was motivated to solve Plaintiff's case to gain promotion to Detective. (Id. 41:14-16.)

As part of his investigative efforts, on August 16, 2017, Verrelli conferred with Detective Timothy Connolly who "performed a Lexis/Nexis query of the numbers Spierer was being contacted from." (County's Am. 56.1 Stmt. ¶ 3.) "On August 24, 2017, Verrelli emailed Bandwidth, a telecommunications provider, in an

---

[2] For the avoidance of confusion, where duplicative exhibits were submitted by Plaintiff as part of her Counterstatement Response to both Verrelli and the County, the Court will cite only to the exhibits attached to Plaintiff's 56.1 Counterstatement to the County.

effort to obtain information about the phone numbers that the calls
and texts appeared to be coming from." (Id. ¶ 4.) Next, "[o]n
August 29, 2017, Verelli[3] conferred with Detective Friberg of the
Police Department's Computer Crimes Unit" who advised Verrelli "to
contact Legal Compliance at Bandwidth and Pinger, another
telecommunications company." (Id. ¶ 5.) Verrelli maintains, but
Plaintiff disputes, that he "did everything in [his] power" to
solve the case but he could not do so without names to investigate.
(Verrelli Dep. Tr. 34:12-20; County's Am. 56.1 Stmt. ¶ 6.)

During Verrelli's investigation Plaintiff regularly
called Verrelli. (County's 56.1 Stmt. ¶ 8.) Likewise, Plaintiff
and Verrelli regularly communicated via text message. (See Text
Messages Between Verrelli and Plaintiff, Ex. C, ECF No. 39-3,
attached to Pl.'s 56.1 Counterstmt. to County.) Plaintiff
maintains she did so because she "repeatedly [had to] contact
Verrelli in order for him to perform work on her case." (Pl.'s
Dep. Tr., Ex. A, ECF No. 39-1, attached to Pl.'s 56.1 Counterstmt.
to County, 89:24-90:19.) Ultimately, Verrelli was unable to solve
Plaintiff's case; "[a]fter Verelli was promoted to probationary
detective, Officer Alberto Acevedo took over the investigation on

---

[3] The docket, and Plaintiff, refer to Verrelli with two "Rs." The
County spells Verrelli with one "R." Hereafter, the Court will
quote Defendant Verrelli's name as written, without identifying
the difference in spelling. When using Verrelli's name, the Court
shall use the spelling reflected on the docket.

November 13, 2017." (County's Am. 56.1 Stmt. ¶ 10.) Despite Acevedo's investigative efforts, "[o]n November 19, 2017, [Plaintiff] reported to the Police Department that she was still receiving unwanted contacts from the caller." (Id. ¶¶ 11-12.)

> B. <u>Plaintiff's Complaint to IAB[4] Regarding Verrelli and IAB's Discovery of Verrelli and Spierer's Text Exchange</u>

"On January 30, 2018, Spierer sent an email to the Suffolk County Sheriff's Office" stating, in pertinent part, she had:

> [V]isited the fifth precinct regarding a stalking/harassing case [and] . . . started working with one officer who started to have a "crush" on me (as heput [sic] it) and sent me messages that were not appropriate to the case. The messages include dreams he had, the perfume I was wearing, the fact that he wanted to send me pictures of himself, that he had a crush on me, that he enjoyed flirting with me, that he needed me to protect him, etc[.] His statements were not proper and should not have been used between a scared civilian and an Officer. I have been the victim of a stalker/harasser for over two years and went to the police to get help but things did not go as planned . . . . I am not putting names or certain details in here until I confirm that this is the correct place to provide my report. . .

(Id. ¶ 13; see also Pl.'s Complaint to Sheriff, Ex. E, ECF No. 39-5.) "On February 5, 2018, Investigator Michael Lohman of the Suffolk County Sheriff's Office faxed Spierer's email to [Lieutenant] Fives of the Police Department." (Id. ¶ 14.) IAB

---

[4] "IAB" refers to the Police Department's Internal Affairs Bureau.

assigned Lieutenant Jennifer Blaskiewicz ("Lt. Blaskiewicz") to investigate Plaintiff's complaint. (Id. ¶ 15.)  On March 1, 2018, Plaintiff's complaint "was entered into IAB's Citizen Complaint System by IAB [Lieutenant] Madeline Cunningham." (Id. ¶ 16.)  On February 28, 2018, Spierer went to Police Headquarters and gave the Police Department consent to search her cell phone.  (Id.) Subsequently, "[t]he Computer Crimes Unit downloaded [Spierer's] phone and created a disc of text messages and photographs exchanged between Verelli and Spierer." (Id.)  The downloaded information reflected that "during the course of their communication, Verelli and Spierer sent each other dozens of texts", the first of which was sent by Verrelli on May 18, 2016. (Id. ¶ 18; see also Text Messages Between Verrelli and Spierer at 1[5].)  "The download indicated that Verelli had not texted Spierer for more than two months prior to her emailing the Sheriff's Office on November 7, 2017." (County's Am. 56.1 Stmt. ¶ 19.)  "The only text that Verelli sent to Spierer after she emailed the Sheriff was sent on February 12, 2018." (Id. ¶ 20; see also Text Messages Between Verrelli and Spierer at 127.)  Verrelli's final text message reads: "Hi!  It's David.  Has he stopped?  Do you have peace?" (Id.)

---

[5] When citing to specific text messages contained within Exhibit C, the Court refers to the PDF page number upon which the text message appears.

Verrelli testified that he believed Spierer was sending him signals that she was interested in him romantically. (County's 56.1 Stmt. ¶ 9; <u>see also</u> Verrelli Dep. Tr. 40:20-23.) Verrelli admits he flirted with Plaintiff in many of the text messages and that, upon reflection, his flirtations were inappropriate. (Verrelli Dep. Tr. 36:7-10; 10:4-10.) The County maintains the last text message exchange which turned sexual occurred on December 12, 2016. (County's Am. 56.1 Stmt. ¶ 21.) The exchange read, in pertinent part:

| | |
|---|---|
| **Spierer** | Hello. Hope you had a wonderful weekend. |
| **Verelli** | Hi hey I had a dream |
| **Spierer** | Are you Martin Luther? |
| **Spierer** | And???? You are killing me. |
| **Verelli** | It was sexy. You complained a bit but then yelled a lot. Haa. |
| **Spierer** | Sounds like me????? I hope you enjoyed the dream. Did you tell your wives about it? |
| **Verelli** | You are very witty. I like that lol. |
| **Spierer** | Thank you. Just one of my many talents. Did they like the perfume thatyou [sic] bought them? |
| **Verelli** | I wouldn't get them that and get those confused feelings. |
| **Spierer** | How many wives are we speaking of? Did you get the dog the perfume? |
| **Verelli** | There is only one but she doesn't pay attention to me. |
| **Spierer** | Wait what? Are you married? And why doesn't she pay attention toyou [sic]? |
| **Spierer** | I'm going to a meeting at 2, try not to miss me too much. |

| **Verelli** | I have been in and out of the house.  Kids and money hold me. |
| **Spierer** | Oh damn.  No more texting you. |
| **Verelli** | No one cares if you text me. But I understand.  I will be out after holidays. |
| **Spierer** | Where are you heading? |
| **Verelli** | An apt. |
| **Spierer** | I know of some, let me know if you need help. |
| **Verelli** | Really, I do need help. |
| **Spierer** | Yes, I'd be happy to assist. |

(Id.)  Plaintiff counters that "text messages of a sexual nature continued after this date, including multiple requests for an ice cream date and requests to call [Verrelli] 'Day-vid.'"[6]  (Pl.'s Response to County's 56.1 Stmt. ¶ 21.)

Spierer's interactions with Verrelli were largely limited to the remarks and comments made via text message.  (IAB Report, Ex. G, ECF No. 39-7, attached to Pl.'s 56.1 Counterstmt. to County.)  Spierer and Verrelli neither met privately, nor

---

[6] By way of additional example, inappropriate text messages sent by Verrelli prior to the December 12, 2016 exchange included, inter alia: (1) Verrelli sending Spierer a "selfie" of himself in uniform whilst in his patrol car (see Text Messages Between Verrelli and Spierer at 18-19); (2) an exchange on July 26, 2016, in which Verrelli told Spierer he was continuing to work on the case "for [his] ice cream and hugs" (see id. at 27);  (3) an exchange on October 14, 2016, in which Spierer informed Verrelli she had been involved in a car accident in which the other driver had hit her "right in the ass" and Verrelli responded that these words made him smile (see id. at 32); and (4) a November 3, 2016, exchange, which continued on November 30, in which Verrelli informed Spierer he had had a vasectomy and made reference to his genitals (see id. at 36, 39-40).

engaged in any inappropriate physical contact. (Id.)  On this issue, the IAB report states:

> Spierer specified there was not an intimate relationship between her and Verrelli.  The two have never gone on any dates and she had never engaged in sexual activity with him. Spierer met Verrelli only at the precinct, where there were always other officers in the room.  The two never met outside the precinct for any reason.  Additionally, while the text exchange between Spierer and Verrelli references presents, ice cream, or food to be shared or gifted between the two, no exchange of these items ever occurred.

(Id.)

"On March 10, 2018, Spierer was interviewed by IAB", during which she "told IAB that she 'went along' with Verelli's texting because she just wanted her case solved."  (County's Am. 56.1 Stmt. ¶ 23.)  Plaintiff asserted that "she did not report Verelli's conduct to the Police Department prior to notifying the Sheriff's Office," nor did she "ask[] for another officer to be assigned to her case[.]"  (Id. ¶ 24.)  "On March 15, 2018, Detective Lieutenant Michael Lutz, supervisor of the Fifth Squad, personally instructed Verelli that he was to have no further contact with Spierer." (Id. ¶ 25.)  "Verelli acknowledged that he understood the instruction and would comply with it."  (Id.)

"On April 17, 2018, after completing the IAB investigation, Lt. Blaskiewicz wrote an Internal Correspondence to Deputy Chief JoAnn McLaughlin, Commanding Officer, reporting the

outcome of the investigation." (Id. ¶ 28.)  "As set forth in the report, Lt. Blaskiewicz recommended that the charge of conduct unbecoming an officer against Verelli for the exchange of texts with Spierer be classified as substantiated.[7]" (Id. ¶ 29.)  "On April 28, 2018, Deputy Chief McLaughlin concurred in Lt. Blaskiewicz' recommendations." (Id. ¶ 30.)  Verrelli's disciplinary records reflect he was given a command discipline on September 12, 2018, after Spierer's complaint was substantiated. (Id. ¶ 31.)  Additionally, a Department Personnel Order issued on June 15, 2018, reflects Verrelli was transferred from the "Fifth Squad Section to [the] Seventh Precinct Patrol Section.[8]" (Department Personnel Order, Ex. R, ECF No. 38-20, attached to County's Am. 56.1 Stmt.)  No explanation is given as to why Verrelli was transferred to the Seventh Precinct Patrol Section; however, Verrelli testified he lost his Probationary Detective

---

[7] A second charge of conduct unbecoming was also substantiated "based on Verelli's texting confidential LEXIS/NEXIS information [to Spierer] in the course of [the] investigation." (County's Am. 56.1 Stmt. ¶ 29.)

[8] Plaintiff objects to the County's usage of Exhibit R asserting, in conclusory fashion as part of her 56.1 Response, that the Exhibit was not produced in discovery.  To the extent Plaintiff argues, as a result, Exhibit R should be stricken, the Court disregards Plaintiff's argument since a Rule 56.1 statement is an improper vehicle by which to make legal arguments, and no motion to strike was ever filed by Plaintiff.  See Taveras v. HRV Mgmt., Inc. No. 17-CV-5211, 2020 WL 1501777, at *2 (E.D.N.Y. Mar. 24, 2020) ("Legal arguments are impermissible in any Rule 56.1 Statement and are to be disregarded.") (collecting cases).

Shield because of Spierer's substantiated complaint.  (Verrelli Dep. Tr. 26:15-16.)

<u>PROCEDURAL HISTORY</u>

Plaintiff filed a Notice of Claim with the County on July 23, 2018.  (County's Am. 56.1 Stmt. ¶ 34.)  Plaintiff indicated she was making a "claim for unwanted and sexually explicit text messages sent by Verelli during the period of September 2017 to December 2017."  (<u>Id.</u> ¶ 35.)  Additionally, "the Notice of Claim further stated that the County was 'liable under 42 U.S.C. § 1983 because [it] had in effect, both before and at the time of the events alleged[,] . . . unlawful and unconstitutional policies, practices, and customs resulting in'" Verrelli's misconduct.  (<u>Id.</u> ¶ 36.)  "On August 2, 2018, the County rejected the Notice of Claim on the basis that it was not filed within the period set by the New York General Municipal Law."  (<u>Id.</u> ¶ 38.)  Subsequently, on August 22, 2018, Plaintiff "filed a Petition for Leave to File a Late Notice of Claim in Supreme Court, State of New York, County of Suffolk."  (<u>Id.</u> ¶ 39.)  The Supreme Court granted Plaintiff's Petition "on the ground that the County received notice of Spierer's claim by her complaint to IAB made at the earliest, on January 30, 2018."  (<u>Id.</u>)

The instant case was commenced by way of Complaint on August 6, 2019 (see Complaint, ECF No. 1).  The Complaint lists five causes of action:

1) Count One: Substantive Due Process and Equal Protection violations under 42 U.S.C. § 1983, as against Verrelli;

2) Count Two: Monell Liability, as against the County;

3) Count Three: Discrimination under 42 U.S.C. § 2000(A) for denial of access to the Suffolk County Police Department's services, as against both Defendants (together with Counts One and Two, the "Federal Claims");

4) Count Four: Denial of access to a public accommodation due to sex and/or gender pursuant to N.Y. Executive Law § 296, as against both Defendants; and

5) Count Five: Negligent hiring, training, retention, and supervision, as against the County (together with Count Four, the "State Law Claims").

The County filed its Answer of October 28, 2019.  (See County's Answer, ECF No. 11.)  Verrelli answered Plaintiff's Complaint on January 1, 2020.  (See Verrelli's Answer, ECF No. 15.)  At the close of discovery, and at the request of the County, the Court held a pre-motion conference with the parties and directed them to file and serve their respective Local Rule 56.1 Statements of Undisputed Fact (see Mar. 10, 2021, Min. Entry); the

parties complied with this directive.  On April 26, 2021, the County filed its motion.  (See County's Motion; see also County's Support Memo, ECF No. 40-1, attached to County's Motion.)  Verrelli likewise moved for summary judgment on May 10, 2021.  (See Verrelli's Motion; see also Verrelli's Support Memo, ECF No. 45.)  Plaintiff filed Oppositions on June 1, 2021, to both the County's Motion (Opp'n to County, ECF No. 48), and Verrelli's Motion (Opp'n to Verrelli, ECF No. 49).  On June 16, 2021, both the County (County's Reply, ECF No. 50) and Verrelli (Verrelli's Reply, ECF No. 51) filed Reply Memoranda.  On March 31, 2022, Verrelli's Motion was administratively terminated to be decided together with the County's Motion.  (See March 31, 2022 Elec. Order.)

## ANALYSIS

### I.   Legal Standard

#### A. Summary Judgment Standard

Pursuant to Rule 56(a), "[a] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "A fact is 'material' for these purposes when it might affect the outcome of the suit under the governing law." Adamson v. Miller, 808 F. App'x 14, 16 (2d Cir. 2020).  Additionally, "'[a]n issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party.'" Id. (quoting Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005)). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Hetchkop v. Woodlawn at Grassmere, Inc., 116 F.3d 28, 33 (2d Cir. 1997). Moreover, "the court is not to make assessments of the credibility of witnesses" on a motion for summary judgment, as "[c]redibility assessments, choices between conflicting versions of events, and weighing of the evidence are matters for the jury." Id.

On a motion for summary judgment, a court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011). Further, while a court "may consider other materials in the record," it "need consider only the cited materials" in ruling on a summary judgment motion. FED. R. CIV. P. 56(c)(3); see also Pennington v. D'Ippolito, 855 F. App'x 779, 782 (2d Cir. 2021) ("[I]n ruling on a summary judgment motion the court need consider only the cited materials in the parties' submissions." (internal citations and alterations omitted)).

In reviewing the record, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is

sought." Sheet Metal Workers' Nat'l Pension Fund v. Vardaris Tech.
Inc., No. 13-CV-5286, 2015 WL 6449420, at *2 (E.D.N.Y. Oct. 23,
2015) (quoting McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir.
1997)).  When drawing inferences from evidence in the record in
favor of the non-moving party, however, a court should not accord
the non-moving party the benefit of "unreasonable inferences, or
inferences at war with undisputed facts." Berk v. St. Vincent's
Hosp. & Med. Ctr., 380 F. Supp. 2d 334, 342 (S.D.N.Y. 2005)
(quoting County of Suffolk v. Long Island Lighting Co., 907 F.2d
1295, 1318 (2d Cir. 1990)).

"Once the movant has 'demonstrat[ed] the absence of a
genuine issue of material fact . . . the onus shifts to the party
resisting summary judgment to present evidence sufficient to
satisfy every element of the claim.'" Pennington, 855 F. App'x at
781 (alteration in original) (quoting Holcomb v. Iona Coll., 521
F.3d 130, 137 (2d Cir. 2008)).  To do this, "[t]he non-moving party
is required to 'go beyond the pleadings' and 'designate specific
facts showing that there is a genuine issue for trial.'" Id.

B. Section 1983 of Title 42

In pertinent part, Section 1983 of Title 42 provides:

[e]very person who, under color of any
statute, ordinance, regulation, custom, or
usage, of any State or Territory or the
District of Columbia, subjects, or causes to
be subjected, any citizen of the United States
or other person within the jurisdiction
thereof to the deprivation of any rights,

16

privileges, or immunities secured by the
Constitution and laws, shall be liable to the
party injured.

42 U.S.C. § 1983.  To plausibly state a claim under Section 1983,

a plaintiff must allege: "(1) that the defendants deprived him of

a right 'secured by the Constitution or laws of the United States';

and (2) that they did so 'under color of state law.'"  Giordano v.

City of N.Y., 274 F.3d 740, 750 (2d Cir. 2001) (quoting Am. Mfrs.

Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999)).

II.  Discussion

    A. Count One: Section 1983 Liability Against Verrelli for
       Violation of Plaintiff's Fourteenth Amendment Due
       Process Rights

Spierer alleges Verrelli violated her Fourteenth

Amendment rights to (1) substantive due process, and (2) equal

protection, and that he did so while acting under color of state

law.[9]  (See generally, Opp'n to Verrelli, at 4-7.)  The Court

addresses each of Plaintiff's alleged constitutional deprivations

in turn.

    1. Plaintiff's Substantive Due Process Claim is Based
       Solely on Verbal Harassment

"The first step in [the] substantive due process

analysis is to identify the constitutional right at stake."  Hurd

---

[9] Because the Court finds Plaintiff has not demonstrated any
deprivation of a right secured to her by the Constitution or laws
of the United States, it does not address the issue of whether
Verrelli acted under color of state law when he engaged in the
at-issue text exchange with Spierer.

v. Fredenburgh, 984 F.3d 1075, 1087 (2d Cir. 2021) (quoting
Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2d Cir. 1995)).
Next, a plaintiff "must demonstrate that the state action was 'so
egregious, so outrageous, that it may fairly be said to shock the
contemporary conscience.'" Okin v. Vill. of Cornwall-On-Hudson
Police Dep't, 577 F.3d 415, 431 (2d Cir. 2009) (quoting County of
Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)); see also Homere
v. Inc. Vill. of Hempstead, 322 F. Supp. 3d 353, 374 (E.D.N.Y.
2018) (Bianco, J.) ("In order to shock the conscience and trigger
a violation of substantive due process, official conduct must be
outrageous and egregious under the circumstances; it must be truly
brutal and offensive to human dignity" (quoting Lombardi v.
Whitman, 485 F.3d 73, 81 (2d Cir. 2007))). "Conduct that is merely
incorrect or [ill-advised] does not meet this high standard."
Scatorchia v. County of Suffolk, No. 01-CV-3119, 2006 WL 218138,
at *3 (E.D.N.Y. Jan. 24, 2006) (citing Lowrance v. Achtyl, 20 F.3d
529, 537 (2d Cir. 1994)); cf. Velez v. Levy, 401 F.3d 75, 93-94
(2d Cir. 2005) (noting actions that shock the conscience occur
"largely in the context of excessive force claims," but also
unquestionably include other "malicious and sadistic abuses of
power by government officials, intended to oppress or to cause
injury and designed for no legitimate government purpose")
(internal quotation marks omitted).

18

In support of his motion, Verrelli highlights Plaintiff's constitutional claim stems "from her multiple voluntary interactions with Verrelli" which consisted of "mutual text messages and telephone conversations." (Verrelli Support Memo, at 6.) Consequently, Verrelli asserts "any act of alleged harassment by [him] was de minimis at worst." (Id.) Verrelli elaborates that, while a police officer's flirtations with a complainant during an investigation may be in bad taste, absent something more, they cannot form the basis for establishing a constitutional violation. (Id.)

In response, Spierer first highlights Verrelli's admission that "sexual harassment (and assault) can amount to a violation of due process." (Opp'n to Verrelli, at 4.) Next, Plaintiff counters Verrelli is not entitled to a ruling as a matter of law that his conduct failed to meet the requisite "shock the conscience" standard for establishing a substantive due process violation. (Id. at 4.) Plaintiff emphasizes she was a longstanding victim of a stalker who threatened her with harassment and sexual threats. (Id.) To that end, Plaintiff asserts she was entitled to have her case handled by Verrelli in a professional manner that did not subject her to the same conduct of which she was complaining. (Id.)

Here, Spierer's substantive due process claim must fail. First, Spierer fails to identify the constitutional right

implicated by her substantive due process claim.  (See Opp'n to Verrelli, in toto.)  Instead, Spierer simply seizes upon Verrelli's general, unsupported, admission that sexual harassment and assault can form the basis for a due process violation.  Spierer fails to cite to caselaw outlining this point of law, or explain which of her rights Verrelli deprived her of when he sent her the offending text messages.  Caselaw instructs that egregious instances of sexual harassment and assault can implicate the right to bodily integrity, which is a right recognized by courts in the Second Circuit.  See e.g., Chambers v. N. Rockland Central Sch. Dist., 815 F. Supp. 2d 753, 762 (S.D.N.Y. 2011) (collecting cases).  The right to bodily integrity protects individuals' "right to be free from certain sexually motivated physical assaults and coerced sexual activity." United States v. Giordano, 260 F. Supp. 2d 477, 484 (D. Conn. 2002).  The right to bodily integrity and privacy "may be violated by sexual fondling and touching or other egregious sexual contact." Izzo v. City of N.Y., No. 15-CV-7685, 2016 WL 4097845, at *4 (S.D.N.Y. July 12, 2016) (quoting Haberthur v. City of Raymore, 119 F.3d 720, 723 (8th Cir. 1997))).  However, to the extent Spierer's substantive due process claim is premised upon her right to bodily integrity and privacy, her allegations do not rise to the level of establishing a constitutional violation of those rights.  Compare Izzo, 2016 WL 4097845, at *4 (finding plaintiff alleged facts sufficient to survive defendant police

20

officer's dismissal motion where, <u>inter alia</u>, defendant allegedly kissed and fondled plaintiff in his hotel room, despite defendant's acknowledgment that his sexual advances were unwanted, and where defendant followed up the alleged assault in the ensuing months with "100s of text messages" in which he told plaintiff "he had never bonded with a victim like this before").

Conversely, "[t]he law is clear that verbal harassment or even threats alone are not actionable under 42 U.S.C. § 1983." <u>Dunn v. Starner</u>, No. 15-CV-6410, 2018 WL 895639, at *5 (S.D.N.Y. Feb. 13, 2018) (quoting <u>Cotz v. Mastroeni</u>, 476 F. Supp. 2d 332, 372 (S.D.N.Y. 2007)); <u>see also</u> <u>Bowles v. State</u>, 37 F. Supp. 2d 608, 613 (S.D.N.Y. 1999) ("[V]erbal harassment or threats alone do not constitute a violation of any federally protected right and are therefore not actionable pursuant to 42 U.S.C. § 1983."); <u>Ramirez v. Holmes</u>, 921 F. Supp. 204, 210 (S.D.N.Y. 1996) ("Allegations of threats or verbal harassment, without any injury or damage, do not state a claim under 42 U.S.C. § 1983."); <u>Scatorchia</u>, 2006 WL 218138, at *4 (finding plaintiff's constitutional rights were not violated by defendant police officer's "inappropriate sexual comments" because "'the use of vile and abusive language, no matter how abhorrent or reprehensible, cannot form the basis for a § 1983 claim'" (quoting <u>Keyes v. City of Albany</u>, 594 F. Supp. 1147, 1155 (N.D.N.Y. 1984))); <u>Roe v. Wilson</u>, 365 F. Supp. 3d 71, 80 (D.C. 2019) (finding

"inappropriate comments . . . cannot sustain a substantive due process claim on their own" and highlighting "[c]ourts have consistently concluded that verbal harassment alone—though inappropriate, unprofessional, and even jarring—does not rise to a conscious-shocking level") (citing <u>Bridges ex rel. D.B. v. Scranton Sch. Dist.</u>, 644 F. App'x 172, 178 (3d Cir. 2016)).

Here, it is undisputed Spierer's interactions with Verrelli were limited to remarks and comments made via text message, and, further, that the two neither met privately nor engaged in any inappropriate physical contact. Indeed, the IAB report makes this clear. (<u>See</u> IAB Report.) Plaintiff does not dispute the accuracy of the IAB Report. Under such circumstances, while Verrelli's conduct was indeed unprofessional and ill-advised, the Court finds Plaintiff's allegations are insufficient to sustain her substantive due process claim since it is based solely upon verbal sexual harassment. Plaintiff cites no case, nor has the Court found any, in which a court upheld a § 1983 substantive due process claim based solely upon a police officer's inappropriate sexual comments made to a complainant via text message.

[Remainder of page intentionally left blank.]

   2. <u>Plaintiff's Equal Protection Claim is Likewise Based Solely on Verrelli's Inappropriate Sexual Remarks</u>

"The equal protection clause directs state actors to treat similarly situated people alike." <u>Giano v. Senkowski</u>, 54 F.3d 1050, 1057 (2d Cir. 1995) (citing <u>Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985)). "[T]o state an equal protection violation, plaintiffs must demonstrate that: (1) compared with others similarly situated, they were selectively mistreated; and (2) that selective treatment was motivated by an intent to discriminate on an impermissible basis, such as gender." <u>Dawson v. County of Westchester</u>, 351 F. Supp. 2d 176, 194 (S.D.N.Y. 2004) (citing <u>Crowley v. Courville</u>, 76 F.3d 47, 52-53 (2d Cir. 1996)). "[E]qual protection claims can be brought by a 'class of one' where a plaintiff alleges that she has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" <u>Afr. Trade & Info. Ctr., Inc. v. Abromaitis</u>, 294 F.3d 355, 362-63 (2d Cir. 2002) (citing <u>Vill. of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000)).

As an initial matter, Verrelli characterizes Plaintiff's Complaint as one which "claims only a violation of [Spierer's] due process rights." (Verrelli Support Memo, at 5.) However, Plaintiff contends her Complaint also pleads a violation of her equal protection rights. (Opp'n to Verrelli, at 5.) Spierer implicitly argues she is bringing her equal protection claim as a

class-of-one claim.  (Id.)  Spierer identifies no comparators, but expounds, "Verrelli can hardly claim that each individual, male or female, who makes a report of criminal behavior is subjected to harassment."  (Id.)

Here, beyond arguing her equal protection claim can be brought as a class-of-one claim, Spierer fails to articulate how her allegations against Verrelli form a viable equal protection violation.[10]   Instead, the crux of Plaintiff's equal protection

---

[10] As an additional point, the Court notes:

> In a class-of-one context, the plaintiff uses "the existence of persons in similar circumstances who received more favorable treatment than the plaintiff . . . to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain.

Terrill v. Windham-Ashland-Jewett Cent. Sch. Dist., 176 F. Supp. 3d 101, 110 (N.D.N.Y. 2016) (quoting Prestopnik v. Whelan, 249 F. App'x 210, 212-13 (2d Cir. 2007)).  Here, Spierer does nothing to develop her class-of-one equal protection claim.  Indeed, nowhere in her papers does Spierer identify any comparators, or similarly situated complainants, that were treated differently to her.  Spierer simply asserts in conclusory fashion that "Verrelli can hardly claim that each individual, male or female, who makes a report of criminal behavior is subject to harassment."  Without comparators, a class-of-one claim must fail.  Cf. Bikur Cholim, Inc. v. Vill. of Suffern, 664 F. Supp. 2d 267, 277-78 (S.D.N.Y. 2009) (dismissing equal protection class-of-one claim because "plaintiffs have made no allegations of similarly situated property owners . . . [and     w]ithout     any comparators[,] . . . plaintiffs' claim under the Equal Protection Clause cannot stand"); Talley v. Brentwood Union Free Sch. Dist., 08-CV-0790, 2009 WL 1797627, at *8 (E.D.N.Y. June 24, 2009)

24

claim, like her substantive due process claim, is based upon Verrelli's inappropriate sexual remarks.[11]   As previously articulated, verbal harassment or abuse, without more, does not give rise to a § 1983 claim.   See Noel Pane v. Town of Greenburgh, No. 07-CV-3216, 2012 WL 12887036, at *17 (S.D.N.Y. Jan. 10, 2012) (granting summary judgment on plaintiff's equal protection claim where such claim was premised upon plaintiff's assertion "that she

_____

(dismissing plaintiff's class-of-one equal protection claim because "the absence of factual allegations of any similarly situated individual is fatal to [the] claim").

[11] Plaintiff argues that Andrews v. City of Philadelphia is a strikingly similar case to the case at bar; the Court disagrees. First, the Andrews Court was analyzing whether supervisory liability could be sustained against an individual defendant after a jury verdict was rendered in favor of female police officer plaintiffs on their § 1983 equal protection claims.   895 F.2d 1469, 1478-79 (3rd Cir. 1990).   The Andrews Court held that the verdict could be sustained because there was evidence the individual defendant personally participated in the harassment of the female plaintiffs by, inter alia, spending an inordinate amount of time at the desk of one of the female plaintiffs, where "he breathed heavily down her neck and spoke to her in seductive tones about her and his personal lives."   Id. at 1474.   Additionally, the individual defendant at issue was found to have condoned the behavior of male colleagues since he "was aware of . . . foul name calling directed to [plaintiff] . . . [and] [t]he name calling was so pervasive and the terms used were so outrageous, that it would be incomprehensible for [defendant], . . . not to have noticed." Id. at 1479.   Moreover, the individual defendant was aware male colleagues had posted pornographic pictures of woman throughout the locker room "in clear view" such that "it would be impossible for [the individual defendant] to contend he overlooked the pornographic displays."   Id.   In short, the Andrews case concerned interactions that went beyond ill-advised, flirtatious, text messages.   Instead, Andrews concerned a traditional hostile work environment claim, in addition to a § 1983 claim, in which the environment was found to have been sufficiently severe or pervasive that it created an intimidating and offensive work environment.

was subjected to harassment in the form of inappropriate sexual comments because she is a woman" as verbal harassment alone cannot form the basis for Section 1983 liability) (collecting cases)).

    B. <u>Count Two: *Monell* Liability Against Suffolk County for Negligence in Hiring, Retaining and Supervising Verrelli</u>

A plaintiff suing a municipality under Section 1983 "is required to show that the challenged acts were performed pursuant to a municipal policy or custom." <u>Patterson v. County of Oneida, N.Y.</u>, 375 F.3d 206, 226 (2d Cir. 2004). "The policy or custom need not be memorialized in a specific rule or regulation." <u>Kern v. City of Rochester</u>, 93 F.3d 38, 44 (2d Cir. 1996) (citing <u>Sorlucco v. N.Y.C. Police Dep't</u>, 971 F.2d 864, 870 (2d Cir. 1992)). A policy, custom, or practice of a municipal entity may be inferred where "the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." <u>Patterson</u>, 375 F.3d at 226 (quoting <u>Kern</u>, 93 F.3d at 44). "However, a municipal entity may only be held liable where the entity itself commits a wrong; 'a municipality cannot be held liable under § 1983 on a <u>respondeat superior</u> theory.'" <u>Moroughan v. County of Suffolk</u>, 514 F. Supp. 3d 479 (E.D.N.Y. 2021) (quoting <u>Monell v. Dep't of Social Servs. of City of N.Y.</u>, 436 U.S. 658, 691 (1978)); <u>see also</u> <u>Segal v. City of N.Y.</u>, 459 F.3d 207, 219 (2d Cir. 2006) ("<u>Monell</u> does not provide a separate cause of action for the failure by the government to

train its employees; it <u>extends</u> liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation.").

### 1. Failure-to-Train

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." <u>Connick v. Thompson</u>, 563 U.S. 51, 61 (2011) (citing <u>Okla. City v. Tuttle</u>, 471 U.S. 808, 822-23 (1985)). Nevertheless, the "inadequacy of police training may serve as the basis for § 1983 liability" if "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 388 (1989). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." <u>Connick</u>, 563 U.S. at 61 (citing <u>Bd. of County Comm'rs of Bryan County v. Brown</u>, 520 U.S. 397, 410 (1997)). The Second Circuit has identified three requirements to determine whether a "failure to train . . . constitutes deliberate indifference." <u>Jenkins v. City of N.Y.</u>, 478 F.3d 76, 94 (2d Cir. 2007) (citing <u>Walker v. City of N.Y.</u>, 974 F.2d 293, 297 (1992)). The plaintiff must show:

> [f]irst . . . that [the] policymaker knows to a moral certainty that her employees will confront a given situation . . . [;]

> Second, . . . the plaintiff must show that the
> situation either presents the employee with a
> difficult choice of the sort that training or
> supervision will make less difficult or that
> there is a history of employees mishandling
> the situation.  Finally, the plaintiff must
> show that the wrong choice by the city
> employee will frequently cause the deprivation
> of a citizen's constitutional rights.

Id. (internal citations and quotation marks omitted)

The County argues Plaintiff's failure-to-train claim must fail since liability in such instances turns on the adequacy of the County's training program, "not its treatment of an individual offending employee." (County Support Memo at 11; see also Reply at 1.)  The County emphasizes Plaintiff is unable to present evidence that the County's training program was deficient "since she conducted no discovery at all regarding the County's programs." (Id.)

In response, Plaintiff highlights Verrelli's admissions that he: (1) was inadequately trained to investigate stalking crimes involving "spoofed" numbers; and (2) was never told it was inappropriate for police officers to become friends with complainants on cases. (Opp'n to County, at 8 n.11.)  Similarly, Plaintiff avers, had Verrelli been adequately trained on how to investigate crimes involving spoofed numbers, and how to interface appropriately with victims of same, such training, together with more stringent supervision, "would have likely avoided the deprivation of Spierer's rights." (Id. at 8.)

28

In reply, the County emphasizes Plaintiff's claim that its officers were inadequately trained "to investigate stalking crimes is irrelevant" since "the constitutional violation [Plaintiff] alleges was one of sexual harassment, not an inadequate investigation of the crime she reported." (County's Reply at 2.)

Here, the Court agrees with the County that the record is devoid of any evidence by which Plaintiff could prove the County was deliberately indifferent to any omissions in the Police Department's training program which, if remediated, would have prevented the sexual harassment Plaintiff's constitutional claims are based upon.[12]   Indeed, it is undisputed that the Police Department has in place a continuing education training, which includes sexual harassment training, which it administers to its police officers (see McKillop Dep. Tr., Ex. A, ECF No. 47-1, attached to Friedman Decl., 17:3-18:4).  Plaintiff makes no effort to demonstrate this training program was deficient in any way.[13]

---

[12] Regardless, the Court has already found Verrelli's interactions with Plaintiff, while ill-advised, did not amount to a constitutional deprivation of Spierer's rights.  Indeed, since Plaintiff's claims are based solely upon verbal remarks and comments, she cannot, as a matter of law, demonstrate a constitutional violation in this instance.

[13] Plaintiff alludes to the fact Verrelli only received sexual harassment training in 2017, and 2018, but the citation offered in support of this statement does not make clear that this is the case; further, Verrelli's training transcript is not part of the record.

Although Plaintiff highlights Verrelli admitted he lacked training in investigating stalking cases involving spoofed numbers, this argument misses the mark.  As outlined by the County, the constitutional violation Spierer alleges is one for sexual harassment not inadequate investigation.  Regardless, "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program."  See City of Canton, 489 U.S. at 390-91.

Additionally, Plaintiff's failure-to-train claim must fail because it is based upon a single incident of harassment, by a single officer, whose disciplinary history does not reflect a pattern of sexual harassment complaints.[14]  See Olsen v. Suffolk County, 2016 WL 5395846, at *10 (E.D.N.Y. Sept. 27, 2016) ("[A] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." (quoting Connick, 563 U.S. at 62)).  Without evidence of a pattern of behavior by Verrelli, or a pattern of similar complaints against other officers, it cannot be said the County was deliberately indifferent

---

[14] Verrelli's IAB History reflects that, prior to the substantiated complaint made by Spierer, Verrelli had no history of sexual harassment or conduct unbecoming of a police officer that would have demonstrated the County was exhibiting deliberate indifferent to a known issue.  (See Verrelli Disciplinary History, Ex. D, ECF No. 36-4, attached to Pl.'s 56.1 Counterstmt.)

to a known issue.   Connick, 563 U.S. at 62 ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights"); Perks v. Town of Huntington, 251 F. Supp. 2d 1143, 1163 (E.D.N.Y. 2003) (granting summary judgment where there was no evidence employer "knew 'to a moral certainty' that sexual harassment was prevalent among its employees, such that its failure to take action [could] be characterized as deliberate indifference").

2.   Failure-to-Supervise and/or Discipline

Failure to supervise or discipline may "also serve as a basis for § 1983 liability where 'policymakers [are] knowingly and deliberately indifferent to the possibility that its police officers [are] wont to violate the constitutional rights of [individuals]." R.A. v. City of N.Y., 206 F. Supp. 3d 799, 803 (E.D.N.Y. 2016) (quoting Amnesty Am. V. Town of W. Hartford, 361 F.3d 113, 127 (2d Cir. 2004) (emphasis and alterations in original)).  "Under the failure to supervise or discipline theory, a plaintiff must show that 'the municipality failed to adequately supervise or discipline its employees (thereby implicitly encouraging or ratifying their unlawful conduct) . . . [and] that such a failure of supervision or discipline was tantamount to deliberate indifference.'" Buari v. City of N.Y., 530 F. Supp. 3d

31

356, 399 (S.D.N.Y. 2021) (quoting <u>Alwan v. City of N.Y.</u>, 311 F. Supp. 3d 570, 578 (E.D.N.Y. 2008) (alteration in original)).  To demonstrate deliberate indifference, a plaintiff "must show that the need for more or better supervision to protect against constitutional violations was obvious." <u>Vann v. City of N.Y.</u>, 72 F.3d 1040, 1049 (2d Cir. 1995) (citing <u>Canton</u>, 489 U.S. at 390). Such obvious need may be proven "through proof of repeated complaints of civil rights violations." <u>Id.</u>  "[D]eliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." <u>Alwan</u>, 311 F. Supp. 3d at 580 (quoting <u>Vann</u>, 72 F.3d at 1049).  "The municipality's failure to take action must constitute 'deliberate indifference, rather than mere negligence or bureaucratic inaction.'" <u>Id.</u> (quoting <u>Amnesty Am.</u>, 361 F.3d at 128).

The County characterizes Plaintiff's failure to supervise and/or discipline Verrelli as untenable, asserting, "municipal negligence in managing an offending employee is unequivocally not a basis for <u>Monell</u> liability." (County Support Memo, at 10.)  The County argues Plaintiff neither contends nor presents evidence that its "program of disciplining its police officers was deficient." (<u>Id.</u> at 11.)  Again, the County emphasizes, Plaintiff cannot make this requisite showing because "she conducted no discovery . . . regarding . . . the County's

programs of hiring, training or supervising its police personnel."
(Id.)   Instead, the County contends "the only evidence discovery
revealed about [its] management of Verelli is that after learning
of his texts to Spierer, it ordered him to have no further contact
with her, demoted him from probationary detective back to police
officer, and issued him a command discipline."  (Id.)

     Plaintiff argues the County was in possession of
Spierer's complaint and the disk download of her text exchange
with Verrelli by approximately February 28, 2018.  (Opp'n to
County, at 11.)  Notwithstanding its knowledge of the exchange,
Plaintiff emphasizes that it took the Police Department eight
months to officially discipline Verelli, and, even when it did so,
this discipline was limited to a command discipline.  (Id. at 11-
12.)  Alternatively, Plaintiff advances a theory of municipal
liability premised upon the County's alleged "inaction and
resultant deprivation of rights with respect to Spierer."  (Id. at
9.)  Plaintiff contends that the assignment of her case to a street
crime officer, as opposed to the Electronic Investigations Section
or Computer Crimes Unit, evinces the lack of seriousness by which
the Police Department took Plaintiff's complaint.  (Id. at 10.)
This lack of seriousness, Plaintiff argues, facilitates a "finding
of deliberate indifference and inaction tantamount to a violation
of her rights."  (Id. at 9-10.)  Likewise, Plaintiff asserts the
County was on notice of Verrelli's potential misconduct.

Specifically, Plaintiff argues Verrelli's persistence in continuing to investigate Plaintiff's case, notwithstanding his being told by his superiors that the case was unsolvable, should have provided reason for the Police Department to look into Verrelli's actions and uncover his inappropriate interactions with Spierer. (Id. at 10.)

As an initial matter, to the extent Plaintiff appears to argue municipal liability premised upon the Police Department's failure to adequately investigate her complaint, including her assertion that the Police Department should have assigned her case to Electronic Investigation Section or the Computer Crimes Unit, the Court rejects this argument. Even accepting as true Plaintiff's contention that the Police Department did not take her complaint seriously when it assigned her case to Verrelli and not a specialist department, courts in this Circuit have widely held "there is no constitutional right to an adequate investigation, and therefore a claim for failure to investigate is not independently cognizable under Section 1983." Buari, 530 F. Supp. 3d at 391 (collecting cases).

Turning to Plaintiff's failure to discipline claim, the Court concurs with the County that the only evidence in the record pertaining to its disciplinary procedures demonstrates that, upon being notified of Spierer's complaint, IAB launched an investigation of Verrelli, which, when substantiated, resulted in

Verrelli receiving a command discipline.  It is also undisputed that on June 15, 2018, Verrelli was removed from his role as probationary detective and reassigned to street officer.  While Plaintiff argues there is no evidence Verrelli's demotion was caused by her underlying complaint, Verrelli's uncontradicted testimony does establish that fact (see Verrelli Dep. Tr. 26:15-23.)  Plaintiff offers no evidence, other than her conclusory statements to the contrary, refuting Verrelli's testimony on this issue.  Plaintiff's assertions in this regard fail to create a disputed issue of material fact.

Moreover, this is not a case where the County failed or refused to investigate a plaintiff's complaint; rather, it is unrefuted that upon receiving notice of Plaintiff's underlying complaint, an investigation was launched by IAB with Verrelli ultimately being disciplined.[15]  Plaintiff's argument can largely be reduced to her feeling that the command discipline was too lenient a punishment, or that the County should have concluded its investigation sooner; this is not an appropriate basis for Monell liability.  See Mahan v. City of N.Y., No. 00-CV-6645, 2005 WL 1677524 at *7 (E.D.N.Y. July 19, 2005) (granting summary judgment where "[t]he case at bar . . . does not allege anything close to

---

[15] Even assuming arguendo Verrelli was not demoted because of Spierer's complaint, it is undisputed that the substantiated complaint did, at the least, result in a command discipline.

a complete failure to investigate" and where "the evidence shows that the NYPD . . . investigate[d] every allegation against the [officer]"); cf. Stern v. City of N.Y., No. 12-CV-5210, 2015 WL 3827653, at *7 (E.D.N.Y. June 19, 2015) ("A plaintiff bringing a Monell claim must do more than simply second-guess the City's prior, good-faith disciplinary decisions.") (citing Connick, 563 U.S. at 68); see also Schneider v. City of Grand Junction Police Dep't, 717 F.3d 760, 777 (10th Cir. 2013) ("Rarely if ever is 'the failure of a police department to discipline in a specific instance . . . an adequate basis for municipal liability under Monell.'" (quoting Butler v. City of Norman, 992 F.2d 1053, 1056 (10th Cir. 1993))).

  C. <u>Count Three: 42 U.S.C. § 2000a Does Not Apply to Sex and Gender Discrimination</u>

  Section 2000a of Title 42 states that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin."  42 U.S.C. § 2000a.  "Title II does not prohibit discrimination on the basis of sex." Guichardo v. Langston Hughes Queens Libr., No. 15-CV-2866, 2015 WL 13227995, at *4 (E.D.N.Y. Nov. 20, 2015) (citing Seidenberg v. McSorleys' Old Ale House, Inc., 308 F. Supp. 1253, 1255 (S.D.N.Y. 1969)); see also Antonetti

on Behalf of C.J.A. v. Dave & Busters 42nd Street Times Square,
No. 23-CV-0101, 2023 WL 1869012, at *4 (S.D.N.Y. Feb. 6, 2023)
(finding plaintiff's Title II claim must fail "because Title II,
by its own terms, does not protect against gender discrimination")
(collecting cases).

The County seeks summary judgment on Plaintiff's third
cause of action arguing, simply, that Title II's statutory scheme
"does not apply to sex and gender discrimination." (County's
Support Memo, at 12.)[16]  Plaintiff does not oppose dismissal of her
claims under 42 U.S.C. § 2000. (Opp'n to County, at 1 n.1.)
Consequently, summary judgment is granted to both Defendants on
Count Three of Plaintiff's Complaint.

D. The Court Declines to Exercise Supplemental Jurisdiction
   Over Plaintiff's State Law Claims

Because Plaintiff's federal claims are dismissed, the
Court declines to exercise supplemental jurisdiction over
Plaintiff's remaining State Law Claims, pursuant to 28 U.S.C.
§ 1367(c)(3), which permits "[t]he district courts [to] decline to
exercise supplemental jurisdiction over a claim . . . if . . . the
district court has dismissed all claims over which it has original
jurisdiction." See Chris H. v. New York, 764 F. App'x 53, 56 (2d

---

[16] Verrelli joined in the County's arguments seeking dismissal of
Plaintiff's Third Cause of Action. (Verrelli Support Memo, at 8.)
Plaintiff did not respond to Verrelli's request in this regard.
The Court therefore finds dismissal of Count Three is appropriate
as to both the County and Verrelli.

Cir. 2019) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); Gonzalez v. Victoria G's Pizzeria LLC, No. 19-CV-6996, 2022 WL 842666, at *3 (E.D.N.Y. Mar. 22, 2022) ("The Second Circuit has made the point that where dismissal of the federal claims occurs before trial the related state law claims should be dismissed as well." (quoting Fernandez v. Main Glatt Corp., No. 12-CV-0986, 2014 WL 1310287, at *4 (E.D.N.Y. Mar. 14, 2014))).

[Remainder of page intentionally left blank.]

<u>CONCLUSION</u>

For the stated reasons, **IT IS HEREBY ORDERED** that the County's Motion (ECF No. 40) is GRANTED; likewise, Verrelli's Motion (ECF No. 44) is GRANTED.

**IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over Plaintiff's State Law Claims; as such, the State Law Claims are DISMISSED WITHOUT PREJUDICE.

**IT IS FURTHER ORDERED** that after judgment is entered in the Defendants' favor, the Clerk of Court is directed to CLOSE THIS CASE.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: February 28, 2024
        Central Islip, New York